GROVES' HEIRS, Appellants, *vs.* FULSOME, *et al.*, Respondents.

16 543
123 213
16 543
143 546

1. A. entered a tract of land and, finding the wife of B. in possession without any claim of pre-emption, paid her for yielding up possession to him. Subsequently, she obtained a patent for the land from the government, under color of a right of pre-emption. *Held*, she holds the title thus acquired, as a trustee for the benefit of A.
2. A married woman, whose husband is alive and has sold the improvements to another, under whom she is in possession, has no right of pre-emption, under the act of congress of May 29th, 1830, or any of the acts supplementary thereto.

3. Although the state courts cannot interfere with the primary disposition of the soil by the general government, yet, if one obtains from the United States the legal title to a tract of land, and in so doing, is guilty of a fraud towards another, or affects himself with a trust, he shall hold the title thus acquired, for the benefit of those who have been injured by his conduct.

4. Frauds and trusts are not within the statute of frauds.

5. If a bill in chancery contains no equity, it should be demurred to; if it is allowed to stand, evidence should be admitted to sustain it.

*Appeal from Crawford Circuit Court.*

The facts are sufficiently stated in the opinion of the court.

*Johnson,* for appellants.

The evidence offered by the complainant and excluded by the Circuit Court, proved every allegation in the bill and more, and came from competent witnesses. It was, therefore, relevant and competent.

If the bill did not present an equitable case, the defendants should have demurred. This they did not do, but answered, virtually admitting the equity and relying on *facts* to repel it.

Groves had a right to enter the land. Fulsome, the husband, had no right of preëmption at the time. He had previously abandoned the possession, and pledged his improvements to Benton, and Benton had sold them at public sale. Improvements constitute the only foundation for a preëmption or preference in the purchase of public land. A party abandons his claim to a preëmption by selling his improvements. *Bird* v. *Ward & Cravens*, 1 Mo. Rep. 398. If the husband had abandoned his right of preëmption by selling his improvements in 1835, there could not remain a right of preëmption in his wife, in February, 1835, he living at the time. It is not pretended that Mrs. Fulsome sold her right of preëmption to Groves. She had none to sell, even if she could have sold it. She merely sold and he bought her improvements. He could have ejected her at any time after he purchased the land. He did not choose to avail himself of his legal rights, but extended a gratuity to her, and paid her own price for the labor she had expended in making the improvements. She then turned

around, and without notice to Groves, entered the land, in part with the very money received on the sale of her improvements and received a patent from the government. This conduct was a fraud. Fraud is defined to be any unfair way by which another is cheated or overreached. 3 Atk. Rep. 757. Tucker's Com. 2 vol. 418.

In *Huntsucker* v. *Clark*, 12 Mo. 337, it was held, that " if a preëmption right, under the laws of the United States, is secured by the fraudulent practices either of the party himself or the officers of the general government, a court of equity will afford redress to the person injured." " Such interference does not proceed upon any assumption of a right on the part of the courts to revise the determination of the federal officers, but is based upon an undisputed jurisdiction incident to all courts of equity over the subject of trusts and frauds. Federal officers have no judicial power and such questions must be left to our judicial tribunals, and their determination does not involve any interference with the primary disposal of the soil." The difficulty suggested in the case of *Lewis* v. *Lewis*, 9 Mo. 183, of a premature interference by the courts, does not exist in this case, because a patent has issued, as admitted by defendants in their answer.

The case of *Stephenson* v. *Smith*, 7 Mo. Rep. 610, shows that a court of equity will require a party who procures a patent from the general government by fraud, to convey to him who is equitably entitled.

Sales of improvements on public lands are not within the statute of frauds. *Clark* v. *Shultz*, 4 Mo. 235. *Huntsucker* v. *Clark*, 12 Mo. 337.

*Frissell*, for respondents.

The Circuit Court did not err in excluding the evidence offered by the plaintiff, tending to show a sale of her preëmption right by Mrs. Fulsome, because, 1. A preëmption right to United States land, since the act of congress of May 29th, 1830, is a personal privilege, and the act makes all sales void, prior to the issuing of final receipts or certificates. Act of

May 29th, 1830, sec. 3, last clause. Act January 23, 1832. *Huntsucker* v. *Clark*, 12 Mo. 336. 2. The evidence was parol. A preëmption is such an interest in lands that a parol contract in reference to it is void under the statute of frauds.

Groves ought not to complain of Mrs. Fulsome for taking his money and then claiming her right of preëmption, for he had in the first place acted fraudulently and oppressively towards her, by entering her out of house and home, when he was compelled to swear, before he could make the entry, that there were no improvements on the land except his own. Laws, Opinions, Instructions, &c. Part 2d, 545.

Admitting that Mrs. Fulsome had practised a fraud upon Groves, of which he could complain in a court of equity, yet Jesse Fulsome was really an innocent purchaser.

SCOTT, Judge, delivered the opinion of the court.

This was a suit in chancery, begun by Ezekiel Groves, (who, dying, was replaced by his heirs,) against Jesse Fulsome, John Propste and others. The bill states that in May, 1836, E. Groves entered the tract of land which is the subject of this controversy, containing eighty acres, at the land office in the Jackson district. In February, 1837, Groves agreed to convey the land to E. Wilson, and bound himself in a penalty to make a title on or before the 1st March, 1840. At the date of this agreement, Susannah Fulsome lived on the land, which had some improvements upon it. Groves and Wilson, wishing to avoid difficulties, and being unwilling to take the land without paying for the improvements, proposed to Mrs. Fulsome to give her fifty dollars for her improvements, or the sum at which they should be valued by two disinterested men. She preferred the first branch of the proposition, received the sum offered, and voluntarily yielded possession to Wilson. During the latter part of the year 1837, Mrs. Fulsome made application to prove a right of preëmption to the land, and Groves was notified to attend, which he accordingly did, but the matter was postponed indefinitely, and afterwards, in February, 1838, without any notice to him, Mrs. Fulsome was permitted

Groves' Heirs *v.* Fulsome et al.

to enter the land, under the claim of a right of preëmption, and obtained a patent for the same. Upon this, in 1843, the administrator of Wilson, who had in the mean time died, began a suit against Groves, on his bond for a title, and recovered the purchase money with interest. In February, 1838, Mrs. Fulsome conveyed the land to John Propste, her brother, and in 1847, Propste conveyed it to Jesse Fulsome, a son of Mrs. Fulsome. In 1848, Mrs. Fulsome died, leaving three children, Jesse, Malinda and Jane. The bill states that Propste was fully apprised of the conduct of his sister, and guided her by his counsel, and assisted her with his means; and that, at the time of the conveyance to Jesse Fulsome, he had full knowledge of all the circumstances under which his mother's title was obtained. Fulsome and Propste relied on the statute of frauds, and in their answers, deny all notice, and insist that they were purchasers for a valuable consideration.

On the trial, the evidence of several witnesses was offered in support of the allegations of the bill; also, that E. Fulsome, the husband of Mrs. Fulsome, went to the south in 1835, with horses, and has never returned. Before his departure, he pledged the tract of land in dispute to James Benton, who afterwards sold it at public sale about the time it was entered by Groves, with an understanding that, if he had entered it, the contract should be rescinded; that Mrs. Fulsome was apprised of the sale, and was asked if she had any right of preëmption to the land. She answered that she had not, that her husband had sold his improvements to Benton, and that she was permitted to live on the place, by his kindness and indulgence. Evidence was also offered tending to show in Propste a knowledge of the circumstances of this transaction, all of which was excluded, to which an exception was taken. There was a decree dismissing the bill, and the complainants appealed to this court.

1. It does not appear from any thing in the cause, under what law of congress Mrs. Fulsome claimed the right of preëmption, which she was permitted to prove up in the month of

February, 1838. The assertion in one of the answers, that she was entitled under an act passed in 1820, is evidently a gross error. It must have been under the act of 29th May, 1830, or some of the acts supplementary thereto. If under any of these enactments, her right had no foundation in law, and an act of great injustice was done to Groves, who had previously entered the land, by Mrs. Fulsome, in entering the same under the claim of a right of preëmption. The *provision of* the law of congress, prohibiting a sale of the right of preëmption, had no application to this case.

2. Mrs. Fulsome had no right of preëmption. She was not the head of a family, as her husband was alive, and had, for a valuable consideration, sold the improvements to another, under whom she claimed, as she admitted. From the evidence in the case, it is clear that the entry of Groves was lawful, as no right of preëmption existed at the time it was made. But if the law was violated, Groves had no hand in it. The improvements were purchased by Benton from Fulsome, and Groves does not claim under Benton. Groves, then, finding Mrs. Fulsome in possession, without any claim to a right of preëmption, gave her fifty dollars to yield to his vendee that possession. With the money thus obtained, she entered the land, the possession of which she had voluntarily given up, under the color of a preëmption, to which she declared she had no right. We cannot but regard this conduct on her part as a fraud on Groves, and the right she acquired by such means must be clothed with a trust for the benefit of Groves.

3. While we are aware that we cannot interfere with the primary disposition of the soil by the general government, yet our courts must not permit citizens of this state, owing obedience and subjection to her laws, under the protection of this principle, to trample under foot the laws securing the observance of good faith in the transactions between man and man. Hence our courts have held, that, although one may obtain from the United States the legal title to a tract of land, yet, if in so doing he is guilty of a fraud towards another, or affects

himself with a trust, he shall hold the title thus acquired for the benefit of those who have been injured by his conduct. *Smith* v. *Stephenson,* 7 Mo. Rep. In yielding her possession to Groves' vendee, for a valuable consideration, Mrs. Fulsome impliedly undertook not to interfere with his rights. It is a fraud for a settler on the public lands to sell his improvements, and with the money go and enter from his vendee the very land which he had been paid to yield up. It is not acting in good faith towards him from whom the purchase money was received. It is true, the purchaser ought to have known that the land might have been taken from him at any time, but he could not expect such conduct from him to whom he had paid a valuable consideration for the right of occupancy. It is better that the sale of a tract of land should be delayed a little while, than that such frauds should be tolerated. The present case is stronger than any of those supposed. Groves had entered his land, and to avoid difficulties and the imputation of acting harshly in depriving another of her improvement, without compensation, he paid for it. The occupant, afterwards, with this very money, enters the same land under color of a preëmption, to which she had no claim in law. Under such circumstances, she must be regarded as a trustee for the benefit of Groves.

4. It is obvious that the statute of frauds has no application in this cause. That statute has never been perverted to the protection of fraud. It is well settled that frauds and trusts are not within the provisions of the statute.

Groves can only have a decree, on the payment of the purchase money advanced by Mrs. Fulsome, as it is presumed that he has or may withdraw from the land office the money he paid when he entered the land.

5. The court rejected all the evidence offered by the complainants. Such a course is rather unusual. The evidence certainly tended to prove the case made out in the bill, and so long as the bill was regarded as containing equity, the evidence offered in support of its allegations should have been received.

From the course of the proceeding, it would appear that a demurrer should have been filed to the bill. To let the bill stand, and yet to refuse any evidence to maintain it, seems rather an incongruity. The complainant, after the rejection of all his evidence, was under no obligation to go farther and offer proof of the fraud in Jesse Fulsome.

The other Judges concurring, the decree will be reversed and the cause remanded.