Leahey v. Witte.

## LEAHEY v. WITTE, *Appellant.*

### In Banc, June 18, 1894.

1. **Trust, Action to Establish:** PETITION: FRAUD. In an action to have defendant declared a trustee for plaintiff as to land purchased by defendant at a foreclosure sale under a deed of trust, the petition alleged that the plaintiff had an equity of redemption in the property; that at her request defendant agreed to buy it in for her; that before the sale he consented to do so; that he bought it at a price greatly less than its value; that she relied on his promise; that after the sale he denied her rights and cast her off. *Held,* that the petition sufficiently charged fraud and stated a good cause of action.

2. ———: SALE UNDER DEED OF TRUST: STATUTE OF FRAUDS. An agreement made by a purchaser at the foreclosure sale with the grantor in a deed of trust that he will buy in the property for such grantor is not within the statute of frauds.

3. ———: ———: EQUITY. Such purchaser will in equity be deemed a trustee for the grantor.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*F. & Ed. L. Gottschalk* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action. 1 Perry on Trusts, secs. 134, 215; 2 Story's Equity Juris., sec. 1201*a*; *Botsford v. Burr,* 2 Johns. Ch. 406; *Sherrill v. Crosby,* 14 Johns. 358; *Minot v. Mitchell,* 30 Ind. 228; 3 Reed on Stat. of Frauds, sec. 929; *Taylor v. Boardman,* 24 Mich. 287; *Hall v. Hall,* 107 Mo. 101. (2) The mere breach of an agreement to hold for the execution debtor was not in itself a fraud. *Fox v. Heffner,* 1 W. & S. 372; *Hames v. O'Conner,* 10 Watts, 313; *McNew v. Booth,*

42 Mo. 190. (3) The finding was against the law and the evidence and should have been for the defendant. (4) Plaintiff's evidence does not come up to the requirements of the law. It must be clear and unequivocal, and not merely preponderating. *Johnson v. Quarles*, 46 Mo. 423; *Forrester v. Scoville*, 51 Mo. 268; *Shaw v. Shaw*, 86 Mo. 595; *Rogers v. Rogers*, 87 Mo. 257; *Taylor v. Von Schraeder*, 107 Mo. 207; *Gillispie v. Stone*, 70 Mo. 505. (5) The agreement relied on is void under the statute of frauds. *Baier v. Berberich*, 6 Mo. App. 537; 77 Mo. 435; *Hammond v. Cadwallader*, 29 Mo. 167.

*J. P. Vastine* for respondent.

(1) Appellant is a trustee. *McNew v. Booth*, 42 Mo. 189; *Grumley v. Webb*, 44 Mo. 444. Respondent's petition is sustained by *Baier v. Berberich*, 6 Mo. App. 537 and 77 Mo. 413. (2) Fraud will not be tolerated under the guise of friendship. *McDonald v. Fithian*, 6 Ill. 269; *Kehoe v. Taylor*, 31 Mo. App. 588. (3) Respondent's evidence was clear, cogent and unequivocal. *Rogers v. Rogers*, 87 Mo. 257; *Shaw v. Shaw*, 86 Mo. 595; *Forrester v. Scoville*, 51 Mo. 268. (4) Agreement rests on parol no defense. *Hall v. Hall*, 107 Mo. 101; *Turner v. Johnson*, 95 Mo. 437; *O'Fallon v. Clopton*, 89 Mo. 284; *Rogers v. Rogers*, 87 Mo. 257; *Damschroeder v. Thias*, 51 Mo. 100; *Rutherford v. Williams*, 50 Mo. 18. (5) If confidence is reposed and is abused, equity will grant relief. *Posten v. Balch*, 69 Mo. 115; *Street v. Goss*, 62 Mo. 226; *Turner v. Adams*, 46 Mo. 95; *Turner v. Adams*, 44 Mo. 535; *Keiser v. Gammon*, 95 Mo. 217. (6) Decree is sustained by *Baier v. Berberich*, 6 Mo. App. 537 and 77 Mo. 413.

H. CLAY EWING, SPECIAL JUDGE.—On August 11, 1888, Bridget Leahey died seized of the house

and lot in controversy, situated in the city of St. Louis, which was subject to a deed of trust made by her to one Chas. Kuhn as trustee to secure a note for $8,000, with six interest notes for $240 each, payable at intervals of six months, and all dated April 5, 1888. This property she gave to her daughter, the plaintiff, by will.

At the time of her mother's demise plaintiff was a minor, and did not come of age until October 28, 1888. The notes secured by the deed of trust becoming due, and default being made in the payment thereof, the property was advertised for sale on the third day of June, 1889, at which sale the defendant became the purchaser thereof, at the price of $8,452, and received a deed therefor from the trustee.

The petition alleges that the property was bought by the defendant for $7,918, less than its value; that at divers times prior to the sale, and while the property was advertised for sale by the trustee, plaintiff solicited defendant to buy the property for her, and protect her interest therein, which defendant repeatedly promised to do; that she believed, trusted and relied on his promises; that said defendant had had business dealings with her mother, and was related to her, and plaintiff therefore the more readily relied on his promises; and made no further effort to cause the property to sell for its value at the sale, or to find someone else to protect her interest, and was therefore lulled into repose and nonaction under the belief that defendant would do as he had promised and buy in the property for her.

That plaintiff subsequently requested defendant to deed the property to her, subject to the deed of trust for $8,000, placed upon it by defendant the day after the sale, offering to pay him for his services, which he

promised to do; but afterward refused, unless she paid him $3,000.

Plaintiff further avers that she is young and inexperienced in business; but that if she had not been satisfied with defendant's promises, she would have made diligent efforts to cause the property to sell for more than it did; and that it would have sold for near $8,000 more than defendant paid for it, and prays that Witte be held to be a trustee for her use, etc.

The answer was a general denial and a plea of the statute of frauds.

Upon hearing the evidence, the circuit court of the city of St. Louis found for the plaintiff, and the defendant brings the case here on appeal.

The circuit court ordered a reference and an account to be taken between the parties. The referee found the plaintiff's equity of redemption in the property to be $2,431.07, on which the decree of the circuit court was based.

The points insisted on by the appellant are: *First.* The petition does not state facts sufficient to constitute a cause of action. *Second.* The finding is against the law and the evidence, and should have been for defendant. *Third.* The statute of frauds.

I. Is the petition sufficient? The plaintiff in her petition does not in words charge the defendant with fraud, deception and false representation, with intent to cheat and defraud plaintiff, but allegations are made which, if true, would doubtless show an intention to cheat and defraud on his part, and which would create a constructive trust.

Section 218 [4 Ed.], Bispham's Principles of Equity, says: "Before leaving the subject of fraud which arises from facts and circumstances of imposition, notice must be taken of a class of cases in which the effect of the fraud has been held to be to create a

trust—the party committing the fraud being termed a trustee *ex maleficio;* and such a trust will arise in spite of the statute of frauds,—or, to speak more correctly, the statute will not be held to apply to cases of that description. It has been already said, in discussing the nature of resulting trusts, that where no money is advanced by the beneficial owner and there is nothing more in the transaction than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee. This is true where there is no fraud; but not where there is fraud." See, also, *Ib.* sec. 91.

The petition alleges that plaintiff, having an interest in the mortgaged premises, at her solicitation defendant agreed to buy it in for her; that he consented to do so before the sale, and so told various witnesses; that he bought it at a great sacrifice; that she relied on his promises; that after the purchase he denied her rights and cast her off. Is not this a sufficient statement of facts in the petition which, if true, would show fraud and deceit, although fraud, in so many words, is not charged?

In the case of *Slowey v. McMurray*, 27 Mo. at page 118, Judge SCOTT says: "There is another class of cases growing out of the conduct of debtors and purchasers at public sales. This is where the purchaser becomes such under such a state of facts as would make it a fraud to permit him to hold on to his bargain. As if a purchaser, by means of a promise to reconvey to his debtor, should induce a relaxation of the efforts on his part to prevent a sacrifice of his property and thereby obtain it at an under price, or, if the purchaser, taking advantage of that reluctance invariably manifested by those attending public sales to interfere with any arrangement a debtor makes to save his property, should create an impression that he

was buying for the debtor, thereby preventing competition, or by any other improper means obtains the property of a debtor at a sacrifice, such conduct would convert the purchaser into a trustee for the benefit of those who were defrauded by his conduct. Such cases go upon the ground of fraud, and courts will give relief without regard to the circumstances whether the agreement was a written or a verbal one, or whether it was supported by a consideration or not." *Estill v. Miller*, 3 Bibb, 177.

In *Rose v. Bates*, 12 Mo. 30, the court says: "The agreement being established, Bates relies upon the statute of frauds to enable him to retain the property thus acquired. But this will not avail him in the present case, it being the peculiar province of a court of chancery to enforce contracts and agreements of this character. The agreement was not that Bates should convey real estate, the legal title to which was then in him, without a writing evidencing the agreement, but an agreement that Bates should bid in the property of Dr. Meredith, on which the complainant held a mortgage, and hold the same in trust for her benefit, and to be reconveyed on the payment of his debt, upon the tender to Bates of the amount due him under the agreement, he should, in equity and good conscience have conveyed the property to Mrs. Rose, and the statute never was designed to aid a party in committing a fraud, but was intended to prevent frauds, and consequently it can not be invoked to the aid of the defendant."

The allegations of the petition are fully sustained by the evidence, and leave no room for reasonable doubt in my mind. *Rogers v. Rogers*, 87 Mo. 257; *Johnson v. Quarles*, 46 Mo. 423; *Forrester v. Scoville*, 51 Mo. 268; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *McNew v. Booth*, 42 Mo. 189;

*Grumley v. Webb*, 44 Mo. 444. The plaintiff testified that defendant agreed to buy in the property for her; that she relied on his promise and did not try to induce anyone else to act for her. Farrelly testified that Witte expressed a willingness to let go the property when he was paid. Tourville swore Witte said he would buy the property for plaintiff. Culver testified that Witte said he would buy the property for plaintiff, as also did Flanagan and Vastine. If there is any reliance on this evidence, and it is not contradicted by any witness save Witte, the allegations of the petition are true. And, if true, the facts take the case out of the statute of frauds. *Rose v. Bates*, 12 Mo. 30; *Groves' Heirs v. Fulsome*, 16 Mo. 543.

In section 96*a*, Browne on the Statute of Frauds, it is said: "And where one party, by virtue of his previous relation to the property, has an equitable interest in it, as, for example, the mortgagor of an estate about to be sold under the mortgage, another who has promised to buy it in for the benefit of the party interested, will be treated as a trustee and affected by the mortgagor's equity."

In the case at bar, the plaintiff had an equitable interest in the property; she was standing in the shoes of the mortgagor when Witte promised to buy the property in for her. The agreement was not that Witte should convey to plaintiff real estate, the legal title to which was then in him, without a writing evidencing the agreement, but an agreement that Witte should bid in the mortgaged property in which plaintiff held an equitable interest, and to hold it for her benefit. These facts make him a trustee for her use, and he can not shield himself behind the statute of frauds. *Ryan v. Dox*, 34 N. Y. 307, and authorities; *Mestaer v. Gillespie*, 11 Vesey, 626; Browne on the Statute of Frauds, secs. 96 and 96*a*; 4 Abb. N. Y. App. Dec. 144;

*Judd v. Mosely*, 30 Iowa 425; *Rogers v. Rogers*, 87 Mo. 257; *Rose v. Bates*, 12 Mo. 30; *Groves' heirs v. Fulsome*, 16 Mo. 543.

My conclusions are, that the petition is substantially sufficient; that the finding of the circuit court was for the right party, and that the statute of frauds can not be invoked in this case.

In my opinion the judgment below ought to be reversed and the cause remanded, with directions to the trial court to enter its decree that plaintiff be allowed to redeem the property within ninety days, by payment to defendant of the amount due him for money expended, repairs and insurance, less the amount received by him for rents; and that in default of such payment, the property be sold subject to the incumbrance placed on it by defendant, and the proceeds arising from such sale be applied to whatever amount is found due defendant, if anything, and the balance, if any, be paid to plaintiff. BLACK, C. J., SHERWOOD, MACFARLANE and BURGESS, JJ., concur. BRACE and GANTT, JJ., dissent; BARCLAY, J., taking no part.

BRACE, J. *(dissenting)*.—I can not concur in the majority opinion, which, it seems to me, is based upon the case made by the petition, rather than upon the case made by the evidence.

The salient features of the plaintiff's case are all presented in the following extracts from her own testimony. She testifies as follows: "I will be twenty years of age the twenty-fifth day of next October; know the defendant Witte; have known him ever since my cousin married him; about six years; my cousin was his first wife; my father is dead, died in 1871; my mother died last August, 1888. At the time of her death I was living in our own house, on corner of Prairie avenue and Penrose and Lee. I lived in the

same house at the time it was sold by Kuhn, the trustee. That was last year, June 3, at the courthouse. I talked to defendant before the sale. I went to see Mr. Witte; found him at his house on Olive and Jefferson avenue, and told him about the property. I told him the property was to be sold on the third of June, and I told him Mr. Culver told me if I could get somebody to buy the property in for me, it would be better for me. So I went to see him, to see if he would not buy it in for me, and he told me that he thought I could handle the property myself; that I was of age.

"I went to the man that had the mortgage on the place and told him what I came for. He said he did not want to have anything to do with the property at all, all he wanted was his money, and another thing, he did not want to deal with a girl. When I was talking to Mr. Witte, he told me to go down and see if I could not buy it in myself, and he said if I could not get my cousin to buy it in for me, instead of letting anyone cheat me out of it, he would rather bid it in for me; it was a shame the way everybody was treating me, he said. If the property was handled right and a good man to take it, he said, it would come out all right after a while. That was all he said about the property. He told me to come around the next day and see about it. I went next day, I came upstairs and he says 'Did you see your cousin?' I said, 'Yes, sir.' He said, 'Is he going to buy it in for you?' I said, 'No, sir, he could not get the amount of money,' and he says, 'Well, rather than anybody else should have it for you, I will buy it for you,' he said. And he says, that he would buy it in for me, and he would sell off the vacant ground and help pay for the house, and after a while the place would be mine, and he wouldn't charge me anything for his trouble; that he felt sorry for me because I was alone, and he was willing to act a father by me.

"I went to see him after the sale or before the sale. I don't believe I was there before the sale, any more than twice. I was at the sale. Mr. Witte bought the property. I did not do anything in the way of asking any person to bid on the property, or to buy the property, because I did not see it was any use as long as he was willing to buy it in for me. After the sale I went to his house. He told me to come to his house that morning of the sale. We rode down in the surrey. I did not go into the house at all, I just went to the door and the surrey was ready, and they wanted me to go down with them, and, in going down in the surrey, he said he was so glad he was going to buy in the place for me and act as a father to me, and would do all he could for me, to help me. He said that the place needed a little fixing, but he was not going to fix it just then, until it was more out of debt. After the sale, he said, that he was going to do right by me, and now I should get a place and live out, and the money that would be over what I would need, that I should give it to him and it would help him a great deal. * * * I never lived at Witte's house. I called there once and a while to see his first wife; my mother was the second cousin, I think, of Mr. Witte's first wife; I am her only surviving child; I had three brothers, they all died young; the one, five years old, the other two as babies."

On cross-examination she further testified: "My mother died August 11, 1888. Since that time I visited Mr. Witte about three or four times; the first time, in May, about two weeks before the sale. At the time I was acquainted with Mr. Cleason, real estate agent in this city. I can not remember the dates of my visits to Mr. Witte. I saw a great big square board on the house, written on it: 'For sale, at the court house, on the third day of June.' * * * I am well acquainted up there in the neighborhood, don't know of any

person in that neighborhood that would be likely to buy a place like this. At the time I saw the board on the property, I visited Mr. Culver, the attorney, and consulted him in regard to the sale of this property. He was my legal advisor in this matter, and we talked it over a great many times before the sale took place. I knew it was to take place on June 3, and I was present at it, at the courthouse, there was a great many people present, not very many bidders. * * * Mr. Witte told me, that he would not like to buy it in for me, but he said he would rather buy it in for me than anybody else. I can not give the conversation exactly every word, they took place last year, but those are the very words he said. I asked that gentleman, Mr. Flanagan, to buy in that property for me, after I had the first conversation with Mr. Witte; he told me to go and see Mr. Flanagan about it. I tried to raise the money to pay off the debt before the trustee's sale. I remember that this question was asked me in Mr. Vastine's office: 'Did yot try to raise the money to pay the debt off before the sale?' And that my answer was: 'They all told me I could not do that. I consulted Mr. Culver about it.' At that sale I was personally present, also one Mr. Becker, an acquaintance of mine; he lives on the third floor of the brick house. I remember the following question was asked me: 'What did he say about dividing the profits?' And that I answered: 'He said that he would divide them up with me.' Of course, I thought that was all right. From my best information, on June 3, 1889, I was seventeen years old, had no experience in business at all, am no relation of Mrs. Witte, never had any business relations with him. * * * After the sale I went home with Mr. Witte, he said he bought the property in for me. * * * He would sell off the ground and help to pay off the mortgage. He would

give me the house after the debt was paid off, and he would not charge me anything for his trouble.''

The other evidence for the plaintiff tended to corroborate her testimony.

The defendant in his evidence denied that he ever promised before the sale to buy in the property for her; but admits that after the sale he said to her ''if you will go to work and struggle for an honest living for a year or two until I get it in paying condition I will give you some of the profits.'' In regard to the value of the property it was shown that the property was assessed on June 1, 1889, at $9,550. Several witnesses were examined as experts in the value of real estate in the city of St. Louis, who gave their opinions of the value of this property at the time of the sale—an average of such estimates would put that value at about $11,000.

By the statute of frauds and perjuries all declarations or creations of trust or confidence in any lands are void, unless manifested and proved by some writing. R. S. 1889, sec. 5184. From the operation of this statute, trusts resulting by implication of law are excepted. (Sec. 5185).

In this case we have no resulting trust growing up by operation of law from the acts of the parties or their relation to each other, and no trust manifested in writing. If there be any enforcible trust in the case it belongs to that class of trusts which is the creature of courts of equity, or rather in which such courts ''make use of the machinery of a trust for the purpose of affording redress in cases of fraud.'' ''In such cases, the interference of courts of equity is called into play by fraud as a distinct head of jurisdiction; and the complainant's right to relief is based upon that ground, the defendant being treated as a trustee merely for the

purpose or working out the equity of the complainant." Bispham's Principles of Equity [4 Ed.] p. 133.

"It is a well settled principle of equity law that where a purchaser becomes such under such circumstances or state of facts as would make it a fraud to permit him to hold on to his bargain, as by representing that he is buying for the benefit of the embarrassed debtor in the execution, or that he intended to reconvey the property, and thereby obtains it at a sacrifice, the court will relieve against such fraud; and the person who has gained an advantage by means of such fraudulent act will be converted into a trustee for those who have been injured thereby." *McNew v. Booth*, 42 Mo. 189. Or, where, "J.'s land being about to be sold by the sheriff, he asked P. to buy it in for him. P. agreed to do so, and informed other bidders, at the sale, of the arrangement, and thereby induced them to desist from bidding. It was held that he took the property as trustee for J." Bispham's Principles of Equity [4 Ed.] p. 275. Such a trust resulting "from the acts of the party, or his acts occompanied by his agreement is held not to be within the statute of frauds."

"The ground of these decisions is that the statute of frauds is not to be used as a shelter for fraud; and that, where a party has by his promise to buy or hold or dispose of real estate for the benefit of another induced action or forbearance by reliance upon such promise, it would be a fraud that the promise should not be enforced; and that the method of enforcement will be through the machinery of a trust." Bispham's Principles of Equity, p. 275.

But no such trust can result from the breach only of a mere parol contract; "as if one agrees to purchase land and give another an interest in it, and he purchases and pays his own money, and takes the title in

his own name, no trust can result." 1 Perry on Trusts [4 Ed.], sec. 134.

This trust must arise from fraud, a mere breach of a parol agreement will not create it.

"In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated." 2 Pom. Eq. Juris. [2 Ed.], sec. 1056.

Applying the principles enunciated in these authorities, and supported by all the cases, we do not see how it is possible to find a trust *ex maleficio* upon the evidence in this case. Apart from the breach of the parol promise, there is no fraud in it—actual or constructive. The sale was a fair and open sale in the market, duly advertised, of which no complaint is made. There is not a particle of evidence tending to prove that defendant did or said anything to deter any person from bidding for the property; or that any person was influenced, or was likely to have been influenced, not to bid by reason of any promise the defendant may have made to plaintiff, or that there was a probability, even, that, but for such promise, she might have influenced some person to bid on the property who did not bid. There is in fact nothing in the case, except this naked parol promise, and the fact that in the opinion of expert witnesses, expressed in a general way about eighteen months after the sale from a general knowledge of the value of real estate in the city, the property was worth about 22 per cent. more than it sold for; the two witnesses presumably having the most particular information in regard to it, the trustee

who sold, and the auctioneer who cried it off, putting it at about fifteen per cent. more than it sold for. Surely fraud can not be predicated of such a sale, and an enforcible trust created upon such evidence. If it can, then the statute of frauds is practically abrogated, and a parol promise in regard to interests in lands is just as good as the most solemn intrument of writing, whenever lands happen to go up instead of down, and it is to the interest of a party to enforce promise. The legislature may in the plenitude of its power repeal that statute, but we have no power to do so.

The judgment of the circuit ought, in my opinion, to be simply reversed, and the bill dismissed. GANTT, J, concurs in this opinion.