HENRY WILDEN, Respondent, v. ALEXANDER McAL-
LISTER, Appellant.

**St. Louis Court of Appeals, January 7, 1902**

1. **Married Woman:** WHEN A COMPETENT WITNESS FOR HER
   HUSBAND: STATUTORY CONSTRUCTION: AGENT.  By the pro-
   visions of section 465, Revised Statutes 1899, a married woman is
   a competent witness in a civil suit or proceeding in the name of her
   or against her husband "in all matters of business transactions
   when the transaction was had and conducted by such married
   woman as the agent of her husband," except as to admissions of the
   conversations of her husband made to herself or to a third party in
   her hearing.

2. **Evidence:** WHEN WIFE, AGENT OF HUSBAND, IS DEAD,
   OTHER PARTY TO SUIT CAN NOT TESTIFY.  Where the wife,
   who was the agent of her husband to make a transaction is dead, the
   other party to the suit is not a competent witness against the hus-
   band as to what was said or done between himself and the wife as
   the agent of her husband in respect to the transaction.

3. **Statute of Limitations:** PART PAYMENT BY DEBTOR, WHEN
   APPLIED.  A part payment, to have the effect to take a debt out
   of the operation of the statute of limitations, must be an appro-
   priate payment on the part of the debtor.

4. **Constitution:** TRANSFER OF CAUSE TO SUPREME COURT:
   CONFLICT OF DECISIONS.  As this opinion is in conflict with
   the case of Beck v. Haas, 31 Mo. App. 184, this cause, in compliance
   with the Constitution, is transferred to the Supreme Court for its
   decision.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P.
Spencer,* Judge.

REVERSED AND TRANSFERRED TO THE SUPREME COURT.

*Frank A. C. MacManus* for appellant.

(1)   No judgment should have been given upon the amounts of the two notes signed by Abbey and A. McAllister, jointly.   No reference having been made to them in the pleadings, nor were the same filed before or since the institution of the cause, no jurisdiction maintained, so far as those two items were concerned.  G. S., secs. 642, 643, page 260; Olin v. Zeigler, 46 Mo. App. 196.  Of course, if plaintiff had applied the alleged payment to Mr. McAllister and Mrs. McAllister's joint obligations before they were both barred, he would have come under the rule as laid down in Craig v. Callaway Co., 12 Mo. 94, and there might be some excuse for the act, but to utilize this fifteen dollars in revivifying joint and individual "dead claims" and "splitting up" the amount of the fifteen dollars, to so use it, is putting an elasticity in the rule that the law has not so far warranted.   (2)   The judgment is grossly excessive.   No judgment should have been rendered on the note of date July 13, 1874, and in any event, no interest should be charged after the ten years had elapsed from its date.  G. S., secs. 4271, 4272, 4294, 4295.   Neither should any interest have been charged on the two joint notes after June 25, 1887, and July 28, of the same year.   Part payments will take a demand out of the statute of limitations, but the mere indorsement of a credit without the privity of the maker, is not evidence of payment for this purpose.   Loever v. Haug, 20 Mo. App. 164.   (3)   The fact that Abbey McAllister was dead, and when living, was one of the original parties to two of the contracts attempted to be sued upon, made all evidence from plaintiff's in the cause, as to her sayings and actions, illegal.  G. S., sec. 4652, p. 1107.   Chapman v. Dougherty, 87 Mo. 620.   The objections to the evidence in reference to her sayings when living, should have been sustained.   Nowack v. Berger, 133 Mo. 24.   Particularly so, when the action was commenced after her death, and sufficient time had elapsed prior to her death to have instituted the same.   Also, when the joint notes had not been either

filed or mentioned in the pleadings of plaintiff as cause of action. The motion in arrest should have been sustained as to those two pretended causes of action.

The alleged statements of the wife were not sufficient to constitute her the agent of her husband in this proceeding on two grounds: First, owing to her death the evidence was not admissible; second, they were incompetent for that purpose, her agency should have been shown *aliunde*. Agency between husband and wife can not be implied, but must be established by strong, cogent and satisfactory proof. Kansas City Planing Co. v. Brandage, 25 Mo. App. 268; 33 Mo. App. 147; 37 Mo. App. 268.

*Arthur E. Kammerer* for respondent.

(1) Part payment on a note or account after the bar of the statute is complete, will revive the cause of action. Shannon v. Austin, 67 Mo. 485; Beck v. Haas, 31 Mo. App. 180. And such is the law, even though the payment is a general one and the application is made by the creditor. Beck v. Haas, 31 Mo. App. 180. (2) Where payment is made to a creditor, without a direction by the debtor designating to which of several accounts the same should be applied, then the creditor may apply it as he elects; and such application may be made at any time before suit is filed. Shortridge v. Pardee, 2 Mo. App. 363; Henry v. Diviney, 101 Mo. 378; Poulson v. Collier, 18 Mo. App. 583, 606; Brady's Admr. v. Hill, 1 Mo. 317; Middleton v. Frame, 21 Mo. 412; Meyer v. Patten, 4 Cranch 317. In such case, the creditor may apply one-half of the sum paid on each of two debts. Beck v. Haas, 111 Mo. 264.

BLAND, P. J.—On September 18, 1899, plaintiff began suit before a justice of the peace in the city of St. Louis on the following promissory notes:

"St. Louis, Mo., July 13, 1874.
"$————.

. "Six months after date, I promise to pay to the order of [stamp] Henry Wilden, two hundred dollars, for value received, negotiable and payable without defalcation or discount, at the Citizens' Savings Bank, St. Louis, and with interest from date at the rate of ten per cent per annum.

"ALEX McALLISTER.
"No. ————.
          "Due ——————.

On the back of said note the following is written:

"April 22, 1895, received $7.50 (seven dollars fifty cents) on account of this note.

"HENRY WILDEN."

And on account for moneys loaned, the first item of which is dated May 15, 1878, and the last one January 21, 1879. The aggregate of the account is $295, upon which credits were given to February 4, 1884, which reduced the account to $155. After this date the following additional credits were given on the account: June 9, 1885, fifty dollars; September 19, 1885, twenty-five dollars; September 19, 1885, fifteen dollars, and April 22, 1895, seven and one-half dollars, leaving a balance due of $196.68, including interest.

The answer of defendant alleged that the note should have been for one hundred dollars instead of two hundred dollars; that it was made for two hundred dollars through fraud or mistake; pleaded payment and the bar of the ten-year statute of limitations; denied the account and pleaded the five-year statute of limitations. The answer was sworn to.

A change of venue was taken from the justice before
Vol 91 app—29

whom the suit was brought to another justice, where a trial was had which resulted in a verdict for the defendant.

Plaintiff appealed to the circuit court. On a trial *de novo*, to the court sitting as a jury, there was a finding and judgment for the plaintiff for the amount found due on both the note and the account. After an unavailing motion for a new trial, defendant appealed.

Plaintiff offered evidence tending to prove the validity of the note; that it was signed by the defendant; also evidence tending to prove the correctness of his account.

The defendant was not present at the trial and no evidence was offered on his behalf. His absence was accounted for by the certificate of his physician, showing he was confined by sickness in the State of Illinois and was unable to attend court.

Plaintiff's evidence showed that the credit of $7.50 on April 22, 1895, indorsed on the note, and the like credit on the same date given to the account, were given on account of a payment of fifteen dollars made to him between the twenty-second and twenty-eighth of April, 1895, by the wife of the defendant. His testimony about this payment is, that he was sick in bed and that Mrs. McAllister paid the money to him while he was in bed. He was asked what she said when she paid it. His answer was: "She said, 'My sister-in-law said I was lying sick and I needed some money,' and that the "Old Man" had given her—her husband—'said the "Old Man" had given her fifteen dollars to bring down to me' and I thanked her and told her to make out a receipt for it. 'No, damn it,' she said, 'you will not.' She says, 'We borrowed money from you, and we owe you money and we never give any receipt, and I won't have any receipt.' "

This evidence was objected to on the ground that Mrs. McAllister was dead. It was admitted that she was dead. The court overruled the objection, to which ruling defendant saved an exception.

It was admitted that the credit of $7.50 made April 22, 1895, was not indorsed on the note or account until the fall of 1899, a short time before the commencement of the suit.

I. By the provisions of section 4656, Revised Statutes of 1899, a married woman is a competent witness in a civil suit or proceeding in the name of or against her husband "in all matters of business transactions when the transaction was had and conducted by such married woman as the agent of her husband," except as to admissions of the conversations of her husband made to herself or to a third party in her hearing. The only competent evidence that Mrs. McAllister acted as the agent of her husband in the payment of the fifteen dollars is found in the testimony of Mrs. Cady, who stated that McAllister told her in the month of April, 1895, that he would send plaintiff some money by his wife as soon as he got a certain house done. This is very slight evidence of agency, but the trial court deemed it sufficient and for the nonce we will pass it without further comment. Conceding that Mrs. McAllister was the agent of her husband to make the transaction—pay plaintiff fifteen dollars—she being dead, plaintiff was not a competent witness (he being the other party to the transaction) to testify as to what was done or said between himself and Mrs. McAllister as the agent of her husband in respect to the transaction, and the admission of plaintiff's evidence as to what Mrs. McAllister did or said was error. Hollman v. Lange, 143 Mo. loc. cit. 106, and cases cited.

II. To take the note and account out of the operation of the ten and the five-year statutes of limitations, plaintiff relies upon the application of credits made by him of the fifteen dollars in April, 1895.

In Beck v. Haas, 111 Mo. 264, it was ruled that "a creditor to whom money is paid by his debtor without direction, may apply one-half the sum as a credit on one demand and one-half on another, provided neither debt is barred by the statute of limitations." That rule "as generally understood

in this State allows a creditor to appropriate a payment in the manner most to his interest when the debtor himself waives the right, provided the application he makes does not affect inequitably the debtor."

In Beck v. Haas, 31 Mo. App. loc. cit. 184, it was ruled that where a creditor has two several items against a debtor, one barred by the statute of limitations and the other not, and a part payment by the debtor (without an express appropriation by him as to which of the debts it is to apply to) is made, the creditor is at liberty to appropriate the payment toward the satisfaction of that portion of the debt which the statute would bar, and such appropriation would revive the debt, citing Mills v. Fowkes, 7 Scott 444; Williams v. Griffith, 5 Mees. & W. 300, and Wood on Limitations, sec. 110, in support.

In Mills v. Fowkes, supra, it was held that in circumstances like those in Beck v. Haas, a creditor might appropriate the payment to the demand barred by the limitation, but to take the demand out of the operation of the statute, the payment must be especially made on account of the debt barred. In the same case, reported in 5 Bing. N. C. 555, it was held that while the creditor might apply the payment to the barred debt, such application would not take it out of the statute of limitations. Williams v. Griffith, 5 Mees. & W. 300, followed Mills v. Fowkes, 7 Scott 444.

Wood on Limitations says: "It seems, according to some of the cases, that where there are several notes barred by the statute and a general payment is made he (the creditor) may so appropriate the money as to take all of them out of the statute," citing Jackson v. Burke, 1 Dillon (U. S. C. C.) 311, and Mills v. Fowkes, supra, in support. As we have seen, Mills v. Fowkes does not support the text. In Jackson v. Burke, the only question before the court was as to the right of the creditor to split up a payment and give credit to several notes, none of which were barred.

In Sanborn v. Cole, 14 L. R. A. (Vt.) 208, it was held that a note that is barred may be revived by an indorsement made by the creditor without the debtor's direction or knowledge, when a general payment is made by the debtor without specifying its application. In a note to this case, the learned editor cited Robie v. Briggs, 59 Vt. 448, and Austin v. McClure, 60 Vt. 453, in support of Sanborn v. Cole, and says, "The Vermont doctrine appears to be followed by the Missouri Court of Appeals in Beck v. Haas, 31 Mo. App. 180," though Mills v. Fowkes is cited for authority for the decision. As holding a contrary doctrine, he cites Mills v. Fowkes, supra; Nash v. Hodgson, 6 DeG. M. & G. 474; Pond v. Williams, 1 Gray 630; Ramsay v. Warner, 97 Mass. 13; Blake v. Sawyer, 12 L. R. A. 712, 83 Me. 129.

In Heath v. Grenell, 61 Barb. (N. Y.) 190, it was held that a creditor could not apply a general payment in discharge of a debt barred by the statute of limitations. The only authority we have been able to find in support of the doctrine that a creditor having two debts, one barred and the other not, can apply a general payment by his debtor to the older debt in the absence of specific directions and thus take the claim out of the statute, is in the Vermont cases. Beck v. Haas, 31 Mo. App. supra, was decided on the authority of Mills v. Fowkes, which we have seen holds to the contrary. The part payment of a debt barred by the statute of limitations takes it out of the operation of the statute on the theory that the debtor making the payment recognizes the continued existence of the debt.

Munger on the Application of Payments, p. 38, says: "An unappropriated payment may be credited by the receiver upon a demand against which the statute of limitations has run. Such an appropriation, however, will not have the effect to take the debt out of the operation of the statute. . . . . The debtor is not presumed to have intended to renew a promise which is no longer legally binding upon him although

he has put in his creditor's power to satisfy, *pro tanto*, a claim upon which he has lost his legal remedy."

In Armistead v. Brooke, 18 Ark. 521, it was held that the part payment, to have the effect to take a debt out of the operation of the statute, must be an appropriated payment on the part of the debtor. This seems to us to be the more reasonable doctrine and is best supported by authority. Following it, we hold that the appropriations of the payment of fifteen dollars by the plaintiff did not have the effect to revive the debts and that the judgment should be reversed. It is so ordered.

As this opinion is in conflict with Beck v. Haas, 31 Mo. App., in compliance with the requirements of section 6, article 6, of the Constitution, we certify and transfer the cause to the Supreme Court for its decision. All concur.