Thomas A. MATHEWS, Executor of the Estate of Martha Jane White, deceased, Appellant,

v.

Esther PRATT and Hughes Pratt, Respondents.

No. 49482.

Supreme Court of Missouri,

Division No. 2.

May 13, 1963.

Roberts & Roberts, by Raymond R. Roberts, Farmington, for appellant.

McClintock & Medley, by E. L. McClintock, Jr., Flat River, for respondents.

EAGER, Presiding Judge.

This is an appeal from an order dismissing plaintiff's petition; since the dismissal was not stated to be without prejudice, it constituted a final judgment. Section 510.150. (All statutory citations are to RSMo 1959, V.A.M.S., unless otherwise stated.) The stated grounds of the order were that the "petition fails to state a cause of action and because plaintiff has an adequate remedy at law." It is plaintiff's (appellant's) position that the suit is one in equity, that it states facts entitling plaintiff to a decree declaring and enforcing a trust, and that plaintiff had and has no adequate remedy at law,—more specifically in the Probate Court by a proceeding for the discovery of assets. Sections 473.340–473.350. It is defendants' (respondents') position that the exclusive remedy of plaintiff lay in the Probate Court in a proceeding for the discovery of assets, that this is not "a purely equitable matter," and that the Circuit Court was without jurisdiction. While other questions were raised in the motion, the issues here are strictly limited by the briefs and the oral argument.

The petition, reduced to its essentials, alleged in substance: that plaintiff is the Executor of Martha J. White, deceased; that Martha's will (we shall so designate her for brevity) after two specific bequests, bequeathed the residue of her estate to four nieces and nephews, including defendant Esther Pratt, share and share alike; that prior to August 22, 1946, Martha opened a checking account, in November 1955 she opened a savings account, and prior to January 10, 1961, she opened another savings account; that at certain times after the respective accounts were so opened the name of Esther Pratt "was added to" the several respective accounts "as a co-depositor"; that the same procedure was followed in another savings account which had previously stood in the joint names of Martha and another, after the death of the other; that these four accounts were in three separate banks or savings institutions; that all the monies so deposited belonged exclusively.

to Martha and were deposited by her; that at the time (times) when the name of Esther Pratt was so added to these respective accounts, Martha was old and infirm, and was unable to go about, pay her bills or write checks; that when the name of Esther was so added, this was done "for the sole purpose of enabling Esther Pratt * * * to write checks * * * and pay the bills of Martha * * *," and "with the understanding and agreement" between Martha and Esther that funds would not be drawn from said account(s) except to pay Martha's bills, and that, in the event of Martha's death, Esther would pay the said funds as provided in Martha's will; that Esther was not to have said funds as her own, and that her name was so added only after she had specifically agreed to hold said funds for the benefit of the beneficiaries named in the will; that Esther knew that her name would not otherwise have been "added"; that the defendants, Esther and her husband, did so agree fraudulently and with intent to deceive, and thus led Martha to believe, both before and after the adding of Esther's name, that they would so hold the funds in trust; that they fraudulently told Martha not to tell her friends or relatives of the changes in the accounts; that they fraudulently told the beneficiaries that Martha did not have enough money to pay her debts and obligations, and that they attempted to coerce some of the beneficiaries into paying some of the debts; that Martha relied on Esther to pay her bills and take her around, at and prior to the change in the deposits, and that a fiduciary relationship existed between them; that Esther had undue influence over Martha, and that responding thereto, Martha had implicit faith in Esther and stated that Esther would "live up to her agreement"; that Esther had fraudulently stated on numerous occasions that she would not claim any of the said funds, but that, following the death of Martha, the defendants fraudulently and with intent to convert, transferred all of the said funds (some $16,467.59) to a joint account of their own. The prayer was that

the court find and adjudge that the said funds, in equity and good conscience, belonged to the estate of Martha, that a resulting trust be adjudged, that the written contract expressed in the signature cards "of the joint accounts" be cancelled, and that the court enter an order that the said money, with all accumulations, be paid over to Martha's estate. (All italics are ours.)

"In determining if a petition states a claim or cause of action, the averments of the petition are to be given a liberal construction, according the averments their reasonable and fair intendment—fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its averments invoke substantive principles of law which entitle plaintiff to relief. A petition is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact." Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, loc. cit. 54; Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761, 767, 47 A.L.R.2d 1038; Downey v. United Weatherproofing, 363 Mo. 852, 253 S.W.2d 976, 977–978. And see Section 509.250 providing that pleadings shall be so construed "as to do substantial justice." In Swon v. Huddleston, Mo., 282 S.W.2d 18, 55 A.L.R.2d 205, we held that if the facts alleged in equity justified the court in declaring a trust on any theory, the petition should be considered sufficient, citing cases.

The parties have, by their presentation here, limited the issues rather strictly. The issue is, simply stated, should plaintiff have proceeded in the Probate Court in proceedings for the discovery of assets and, having failed to do so, does the petition here fail to state a valid cause of action, for lack of jurisdiction or otherwise? Respondent insists here that the trial court correctly ruled that plaintiff had an adequate remedy at law, while appellant asserts that the court erred in so ruling. In any event, we reach the question,—did the

exclusive remedy here lie in a discovery proceeding in the Probate Court?

■ Discovery proceedings have long been generally regarded as actions at law, in which the jurisdiction of the probate court is exclusive. State ex rel. and to Use of Clay County State Bank et al. v. Waltner, 346 Mo. 1138, 145 S.W.2d 152; State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909; Cox v. Main, 236 Mo.App. 88, 152 S.W.2d 696; State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116; Murphy v. Mercantile Trust Co., In re Frech's Estate, Mo., 347 S.W.2d 224. And it has likewise been held many times that where the issues in a cause of action are purely equitable and equitable relief is sought, the proper jurisdiction lies in the circuit court and that the probate courts have no power to establish, declare, enforce or execute trusts. In re Frech's Estate, Mo., 347 S.W.2d 224; State ex rel. and to Use of Clay County State Bank et al. v. Waltner, 346 Mo. 1138, 145 S.W.2d 152; Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517; State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116; Stark v. Moffit, Mo. App., 352 S.W.2d 165; Bante v. Bante Development Co. et al., Mo.App., 27 S.W.2d 481; Cox v. Main, 236 Mo.App. 88, 152 S.W.2d 696. Typical of such cases are instances where it was sought to establish and enforce a trust in money or specific personal property and to invalidate an apparently valid legal title, to cancel and liquidate a trust after a claimed revocation or termination, or to enforce a transfer of securities claimed to be held in trust. Most of those opinions preceded the effective date of our present Probate Code, Laws 1955, RSMo 1959, §§ 472.010 et seq., although Frech and Stark came later. However, even before the new Code, it would be inaccurate to say that the probate courts had no equity powers or jurisdiction. See, for instance, Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353; Hoffmann v. Hoffmann's Executor, 126 Mo. 486, 29 S.W. 603; State ex rel. Stetina v. Reynolds, 286 Mo. 120, 227 S.W. 47; Equity Jurisdiction in Probate Matters under the New Code, Leslie A. Welch, Washington University Law Quarterly, Vol. 1961, No. 4. We must now note § 472.030, RSMo 1959, V.A.M.S. (Laws 1955), which reads in part as follows: "The court has the same legal and equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters * * *." We have no occasion here to construe that section, nor shall we do so. We merely call attention to it. It was ignored in Frech, supra, but it was discussed later in Stark. The proper time and place will come for an adequate construction of the section, but this case presents neither, for this appeal does not arise from probate action or assumed probate jurisdiction.

■ The contention here is that the Probate Court had jurisdiction to determine plaintiff's claims in discovery proceedings and that such jurisdiction was exclusive. With this background, we now examine the present petition more concretely. It is ambiguous in certain respects; for instance, it refers to the fact that Esther Pratt's name was "added" to the various accounts as a co-depositor, without setting out the forms of the new deposit agreements; and it is somewhat ambiguous as to the actual effect, if any, of the "undue influence." Affording to the petition, however, the benefit of the liberal construction which our cases require, we hold that the allegations of the "adding" of Esther's name to the respective accounts as a "co-depositor" may, for our present purpose, be considered as allegations that joint accounts were thus created with the usual implications. Section 362.470. This, of course, is corroborated by the factual allegation that Esther was able to, and did, withdraw all the money after Martha's death. The petition does allege that all the money was Martha's and that she was old and infirm; that the joint accounts were created as aforesaid; that prior to the times of the changes Esther *agreed* that no money would be withdrawn except to pay Martha's

bills and that she further "specifically" agreed, prior to the times of such changes, that upon Martha's death she would hold the balance for the beneficiaries in Martha's will and pay it as provided therein; that otherwise such changes would not have been made. The will is set out in full in the petition. Certain of the allegations are rather evidentiary as, for instance, the various remarks supposedly made by the defendants pursuant to the plan alleged. It is further alleged, however, that both before and after the changes in question the defendants "fraudulently and with the intent to deceive" and to convert the money, made the agreement to hold the funds in trust and led Martha to believe and rely upon the agreement; that a fiduciary relationship existed between Martha and the niece, that the latter "had undue influence" over Martha and (in substance) that the latter had implicit faith in Esther, "responding to such undue influence"; that defendants, after the death, fraudulently converted the money from each of the several accounts and placed it in their own joint bank account. The prayer of the petition is that a trust be adjudged (stated as a resulting trust) that the written contract expressed in the signature cards be cancelled, and that the money, with accumulations, be paid over to plaintiff.

Under the doctrine of Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817, the legal ownership of the accounts would ordinarily have been transferred to Esther upon Martha's death. However, allegation and proof of a fiduciary relationship (In re Patterson's Estate, Mo., 348 S.W.2d 6) would presumptively invalidate such a supposed gift. Regardless of that limitation, however, the allegations here bring the case within the exceptions noted in the Watts case. And see also Krummenacher v. Easton-Taylor Trust Co., Mo.App., 306 S.W.2d 593, where allegations of very similar facts were recognized as constituting an exception to the Watts rule, and as supporting a claim in equity, although the claim eventually failed for insufficiency of

proof. We do not reach that problem here. We construe the present petition as a suit in equity to declare, establish and enforce a trust, as well as to cancel instruments which, upon their faces, created a legal title. The petition is in some respects a little inartistic but presumably this may be remedied upon remand. It might be well to refer again to the case of Swon v. Huddleston, Mo., 282 S.W.2d 18, 55 A.L.R.2d 205, for its definitions of the different types of trusts. While the petition does not affirmatively allege in so many words the absence of an adequate remedy at law, we think the facts alleged are sufficient for that purpose.

■■ The allegations of Esther's agreement are expressed in somewhat varying forms; she is alleged to have agreed that, on Martha's death, she would hold the money "for the benefit of the beneficiaries" of the will, also "to pay out said funds in accordance with" the will, and "as provided in" the will. In one or more places it is stated that Esther agreed to so pay the funds to the beneficiaries named in the will. The beneficiaries, individually, are not parties here. We construe the substance of these allegations to be that Esther agreed to hold the funds in trust for the benefit of the beneficiaries, but through the administration process. The Executor would not be justified in knowingly permitting such funds to be paid direct to the beneficiaries of the will, thus ignoring the probate of the estate. He represents the beneficiaries as well as all other persons interested in the estate, and he is under a primary duty to collect all money and assets due the estate. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446. He certainly qualifies here as a real party in interest. Bequests are not paid until the ordinary process of administration is completed. If plaintiff eventually succeeds, the beneficiaries will thus share the trust funds, subject to claims. In such event, the court may decree that the money be paid to the Executor for the use and benefit of the beneficiaries named in the will, subject to expenses and claims. In

oral argument counsel for respondents raised some question as to the right of the Executor to sue. We assume that they referred to the matter just discussed, and we have thus stated our views.

We hold that this is a suit in equity to establish and enforce a trust, and that the Circuit Court had inherent jurisdiction; also, that the petition properly stated a claim. It may be that the Probate Court would have the power to do the same things in a discovery proceeding under the existing Code, contrary to what has so long been declared. We do not so decide here. In such event, however, the probate jurisdiction could only be *concurrent,* for the inherent jurisdiction of our circuit courts to establish, declare and enforce trusts may certainly not be foreclosed by probate jurisdiction or proceedings. The petition here was erroneously dismissed.

We have examined all the cases cited in the briefs and many others. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

All of the Judges concur.